Good afternoon. Illinois public court first district court is now in session, the first division, the Honorable Justice Michael B Hyman presiding case number 12 dash 1321 people versus George Anderson. Good afternoon. Sorry for the little delay. My name is Justice Michael B Hyman with me is Justice, really a pachinko and Justice Carl Anthony Walker. We will conduct ourselves like we would in court. Please make your arguments we will probably interrupt. Finish your thought, and then if you would answer our questions. Each side is 20 minutes. I'm Mr Hernandez you have our excuse me Mr Arnstein, you hit you can have time to reserve for rebuttal. Let us know when you introduce yourself how much time you wish. Good morning, your eyes Mike Ornstein city public defender for the pen and appellate George Anderson, and I like to present present five minutes for rebuttal please preserve. Thank you, as Weber. Good afternoon, runners. You're better today last time you had a terrible cold. Yes, yes I feel much better today. Thank you. You've been before to Mr Ornstein, but you are both veterans of our division so glad to have a good thing. Go ahead. Okay, you introduced yourself. Any questions anybody has. Okay. Mr. Does the same and I would just like to point out that I met to Paul last goal and there are a couple students behind me watching this. Thank you.  Thank you, Your Honors. I'm going to primarily focus on actual innocence and specifically on the affidavit of Bertram Anderson, who I will call Bertram. Under people be Robinson, Your Honors. The primary question facing this court is this. Does Bertram's affidavit, taking his to make it probable that the jury more likely than not would acquit. The answer is yes. Bertram attested Jerome Johnson sought to reclaim his car. Bertram's fellow see notes, Michael Sutton and Anthony Wilson shot at Johnson and shot first. We've read your briefs, gone through the record. So, make several arguments. What is your best argument on that issue. The best argument is the affidavit, the affidavit is taken is true and taken is true. He Johnson acted in self defense because he came under fire while trying to do a dangerous illegal thing reclaim his car, and because Johnson, it can claim self defense account. There's nothing very interesting to be accountable for, but the state says that you're doing nothing more than rehashing the self defense claim that been rejected by not only the circuit court but by our court. Previously, well they they argue that they make the general argument that I'm doing that as a whole. But if you look at their arguments. Their arguments very specifically pertain to the affidavit of Johnson, the affidavit of Bertram Anderson is new and newly discovered and other people VRTs, and you can raise new claims of actual innocence with with even if you've raised it before, when you have a new witness. Mr. Ornstein, let me ask you a question really quickly though. Did you write this week. I did. You did. Okay, because you just gave a different standard when you started from what you actually state in your brief. In your brief you said that the standard was that he needed to show at the states that an acquittal is once you give a different standard you said that he needs to show that it's probable that at a later stage, he will be able to make a showing that an acquittal is more likely than not. That's not what you just gave us earlier. I may have made a mistake at the at the late at the ultimate stage of stage three, he will have to show that an acquittal is more likely than not. At this stage, he only need to show that it is probable that an acquittal is more likely than not so so it's sort of like 51% against 26% at this stage. Sure, but in your brief on page 14 now if you have your brief in front of you but that's where you make the statement that the petitioner need to make a showing at this stage, and then the quarter was more likely than not. Let me, let me. Well, then the next sentence I say he need only establish, oh there's a typo need not make it state showing at this stage that it was more like that. He need only establish a probability. Okay, there's a show me he will make the third stage showing so it's not as well written as I could have. All right, that clarifies it. Thank you. The, the state says there's ample evidence that shows that Bertram's affidavit is not newly discovered. What was, what's your response to that. I'm not sure what was it they say there was ample evidence. They, they, they, they, they, their argument is basically that that because Bertram said he saw Anderson. Anderson must have been able to see Bertram therefore Anderson knew Bertram was there and should have gotten as a witness. I would say first of all, there's no indication that Anderson had any idea who Bertram was. And just because one one recognizes the other space the other is not necessarily true. And the other point is that is that just because a pedestrian or someone standing in the streets he's a driver does not mean that the driver is going to see the person on the street, especially where, according to Bertram's affidavit, he was not with the three people that Anderson said he did see. Anderson said he saw three people Sutton, Wilson, I forget the third one, but it was not it was not Bertram. And, and, and the end and according to Bertram's affidavit, he and two other people were behind so just because Anderson. So all these three people. Well, first of all, Anderson said he saw the three people so that there's a reasonable inference he didn't see anybody else, but especially considered with Bertram's affidavit that they were not with the three people that there's at least a reasonable inference that he did not see them, and other people we know which I say, at this stage a reasonable inferences go to the defendant petitioner. Thank you. What about I mean their next argument is, if it's at least cumulative as well. Well, again, the I'm not sure how Bertram's affidavit could be cumulative I mean it's a new it's a it's a new person with a new point of view. You know with with with new moat with new motors new on a different side. You know, there's a there's a little bit stronger I mean the Johnson's argument is cumulative, but even that's not cumulative. Because, because now you have to even Johnson's is a cumulative because you have to consider it in conjunction with Bertram's it's not just just one witness is to what you mean cumulative to the trial testimony. Yes, yes. Yes, no it's not cumulative because the Anderson couldn't see who didn't see the shooting. But there's no dispute there was an ongoing conflict between Jones and Johnson, no dispute that Sutton made statements indicating he intended to shoot Johnson, and Anderson, and Anderson if they came to get Johnson's car, no disputed members of But if you have some, you have some facts and evidence that are cumulative, and some that are not cumulative, it doesn't make the whole thing cumulative we're relying, you know, primarily on that on that who shot first and that and that and that is not the same information came out at the first trial. All you're doing is bringing forth a different person to provide the same information that everybody has always that has already been tested so to speak. No, I, it is not and I and I and I'm looking at the briefs that perhaps that did not do as good a job with the briefs with this as I should have. There were there were scenes that to there were there were shootings are two different scenes. The first scene was by was by Jerome Johnson's car, the, the alley and the gangway and and know there's absolutely no testimony for extra except contrary state testimony as to who shot first the state witnesses said that, that, that, that Johnson Jefferson Johnson and Anderson shot first or four people shot first. This is this is there there's no evidence in the trial record that that that the CNO shot first in in in after that first shooting. As to the second shooting. There is some evidence that that corroborates that that Johnson was shot at first, it was it was the affidavit witness, very similar to the name Bertram it's it's not I'll call him the the neighborhood eyewitness that that said that he, that the first shots came from I believe the north of the south, whichever, whichever point the sea notes were at. So, so, so it is similar to that, but it is not cumulative because, because the neighborhood eyewitness sort of went back and forth and we if you look at his direct his cross and his redirect. He sort of said what people wanted him to say. And so just to some, some, some testimony goes to the same point, doesn't make you cumulative, the standard for cumulative is if it adds anything to the trier effect and when you've got direct you know direct evidence as to the first scene that as to the trier effect and when you have, you know, a second one is corroborating the first witness that also has to the trier effect. I mean, unless there are any other questions I know that the state argues that Johnson was the initial aggressor. And there are three ways you can be an initial aggressor, and none of them apply here. You can you can commit you're trying to commit a forcible felony that's under that's under subsection a of section 574 Johnson was there to get his car. You can call that brave foolhardy we've been reckless conduct, but you can't call it a forcible felony on the second way you can be an initial aggressor is by provoking an assailant's force, including in order to create an excuse to create great bodily That comes to this point to that the state contends that both sides came there for a fight, and that that's when they go on to say and Johnson shot first based upon the testimony from the prior trial. Well that well that goes to motive, Your Honor. Okay, so if you say both sides both sides came there for a fight that could go to section to be of the statute, where you initially provoking an assailant sport in 10 you know with intending to provoke So, but that doesn't make any sense because he's not going to draw the opponent's fire, you know, and in the hopes that that they'll miss and late years later to trial, he's he can be self defensive that's that's that's every logical. You. So the only the only the section that's a specifically sites in his brief of the statute is subsection see where you initially pro provoke force without this incident. And I mean, so, so, so you had so even if both sides came for a fight under subsection BC or B for that matter, one side has to be the initial aggressor. And who was the initial aggressor we see is the one that's the ones who stole the car, who put it there, who waited who lurked waited there for for for Johnson to come and who are themselves, and, and, you know, who shot first that makes them the initial aggressive if you if you think you might be there for a fight, but then you but then you know you shot at you can claim self defense, I mean and I mean and I think I think the other thing is the idea that he came there to commit first degree murder. He wouldn't have done it the way that says in the affidavit you're not going to get out by yourself and look around and go towards your car walk right into the trap, with no backup, you're going to come with two cars and shoot right from the from the from the So, so Johnson, you know, if Johnson if Johnson was going first and because Anderson was there is the driver so to speak, right, this is not about accountability Anderson didn't fire any guys. That's correct. So Johnson, if Johnson was going there, intending to basically commit a murder from the start, it would not be it would not be particularly rational thing to go get out by himself at the scene of a trap where he knows they're waiting for him without any help and and and and and get shot at first it makes much more sense that he was there to do what he what what they were planning on this unit for planning on him being to do, which is you could try to reclaim his car which is a logical thing to do because the car is an expensive thing and you don't want to take a new shop shop. Well, I don't understand why one would follow the other necessarily you say it so. My wish would follow the other. You know, to get the car that he wouldn't come shooting first that that didn't make any sense to you. Well, I mean, not that he wouldn't come shooting first by himself. You know, but I that's what I'm not clear. Why not, because if you know if you know because he because we know people are setting a trap for you. You can reason to sleep and reasonably anticipate that they would be out. And you're not going and you're not any and you know and you're going to want you're going to want to, you're going to want to, to, you're saying because there's nobody else in the car and it's that shooting that that excuses it. You say, you say it would come with backup you wouldn't just go in there. You repeat the whole question I'm sorry. You say he would have been more prepared. If he was if he was there. And I'm not clear on what you mean by. Yeah, if he was if they were if Johnson and Anderson were going there, intending to commit first degree murder at the start and weren't there for the car. They, they, they drive up. They, they see they see they see the three adversaries. They're going to, they're going to, you know, the, the, for Johnson to get out and and and go go go go to go to where they expect him to go, he's falling into a trap. It doesn't make any sense. But the other thing is, at this stage, you take the affidavit is true. So, so, you know, if he if he's, you know, he's going there and Johnson shot first I think I think it's pretty speculative to say when when he when he's when the car is there is going to reclaim his car that he's not going to reclaim his car is going in for first degree murder. I do have a question on the other issue. Brady. Yeah. They raise a question of whether this motion to compel discovery was actually even filed is it's not stamped it's not signed. I mean there's a lot of questions of whether it even exists. I mean what, what's your response to all of that, my response to that there should be no question that it exists, because, because Anders Anderson offered is part as part as part of his, his petition for his purpose for you know to support his petition, and therefore it should be taken as true that it exists. Well, well, but just because he says it exists, we should take it as existing. I mean he has no he has no affidavit from their point is, all right, if it exists. What about an affidavit from Alvarez you said there isn't anything or what about an affidavit from Johnson's lawyer, or, you know, where is anything supporting this, are we supposed to just rely on the fact that he, he believes it. I mean, a yes because because his allegations are taken as true but be. He's not he's certainly he's not expected to get he's certainly he's not expected to get the evidence from his lawyer, because that could be possibly construed as an effective assistance of counsel. I mean, I mean, you know, Johnson's lawyer, he has no obligation whatsoever towards him, and certainly the state's the state's attorneys does not. And, and it's certainly and if they're saying it's a forgery, then that's a credibility issue that they can raise and should and shouldn't be much of a problem all I have to do is call somebody, you know, either Alvarez or Johnson's lawyer, and they're on the other hand they're saying no, you have a burden. You could have done gotten an affidavit from at least Johnson's lawyer saying that what that document is, I mean alleged motions what they call it. That's true but but but section 122 to and people be counts only requires documentation not not documentation documentation topic documentation. He submitted he submitted a copy of the motion. When you say it's a copy of emotion, it's not stamped. It's not signed, but it makes sense it's not stamped or signed your honor because, because the person he probably got it from is Johnson because Johnson he gave up he submitted other documents from Johnson a letter to Johnson from from one of our lawyers, and it's perfectly common and normal for a lawyer to to to send a plea to send to print off a copy and send a copy of a plea to a client is it's not expected or normal that is that it has to be a file stamp guessing that. And the other thing. Why couldn't you done an affidavit from Anderson to that effect. If that is a true what you just said, Anderson knows how he got it. Well, wait a minute, the clerks file has to have a copy of the stamp and sign motion. Let me let me let me get past the stamp inside. We're not arguing, or we're certainly not arguing now that it was necessarily file we're arguing that it was drafted by Council that it was, there was something that was drafted by Council and and and Johnson's Council, and Johnson believed at the time and Johnson's Council believe that the things that were in a word true, because she drafted it. She may not have filed it. And I think in fact she probably didn't file it, but she but she but but she drafted this thing that said that state's attorney told said to me that that that these files that these files that these files are lost there are no And that's what we're relying on. I don't know that it was filed and and that's not essentially what we're saying. Now as far as an affidavit, I mean I have I'd have to go to go back in and see I believe you said everything here is true and and and and I think implicitly, he's including that he's asserting that is true. Okay, so you're resting this all on. Virtually innocent, saying he's in relation to the defendant. Oh no, no, nothing. I never heard that you're you're basing this on his affidavit that he talked to the police way back when this all happened. Right, they, they, the state should have known that the state did know that you're, he's saying the state should have known that the defendant is saying well the state should have known that, and they should have turned that over to me because it's a exculpatory evidence and they didn't, and the police were saying and the state was saying, Oh, this, a lot of these things in the file were lost. Well I would say what what the detectives know it's part of what the states, the state knows it's not just what the state's supposed to know. And so the detective who took his statement new, and that's all you need you don't need a prosecutor to actually also know. Right. Okay. The, but the police reports were given to the defendant but not general notes not street files, none of that. Yeah, in particular, I mean, I mean, particularly not the GPA or the general progress notes, which is, which is, you know, we want we all know those, those are the steps they take when they're actually doing something with a witness. Okay. Thank you. If you could. Sure. So, so for those reasons we would ask that this court reverse the trial court's decision every man for further proceedings on the petition and appointment of counsel. Thank you, Miss. As far as general progress reports that you that we know today that they were lost, and we know they were lost because they've been found. Did you ever have any information in the past and the council have any information in the past that those notes were lost, because you make the statement of your brief and I can't and it's quoted, so I can't tell if you're saying this is what the attorney for a misguided said or is this just, you just simply put it in quotation marks, could you please will kind of point to the 26 of your brain is 26 of my brief. Okay. Can you ask it again. I'm sorry. Just admit way down the page, you mentioned that the general progress reports were lost. And of course today we know that they were lost because they've been found. My question is whether or not anyone knew in the past that these notes have been lost. I, I guess it comes as a surprise to me that they had been found. I. But, but the, but what I'm arguing is, is that, is that during this litigation. Co counsel's co defendant's lawyer believe they were lost according to the state's attorney. And so at trial, you know, this was not a discovered witness I'm not quite, I guess I'm not quite sure we get that. Nevermind. Okay. Okay, Miss Webber. Thank you, Your Honor. Defendant was not found guilty because Johnson shot. Can you turn up your volume please. Yes, I can. Thank you. Give me just a moment. Okay. Can you hear me better. Much better. Okay, thank you. Defendant was not found guilty because co defendant Johnson shot first defendant was found guilty because he and Johnson, both went over there as part of an ongoing and escalating gang dispute to shoot the sea notes. This court has already rejected the assertion that they went over there on an innocent mission just to receive Johnson's car that was rejected by the trial court and that has been rejected by this court Bertram's affidavit doesn't offer any insight into defendants intent and it doesn't cast any doubt on the narrative of the events that was presented at trial. It is you do you disagree that it's newly discovered, or do you agree with newly discovered. I don't agree that it is newly discovered but even if it was, it is not material. That's not material reason it's not material because it doesn't matter who shot first. It, there was ample testimony that the defendant was involved in this from the beginning, the very first instance, all of these incidents took place within about a two hour time period. And the very initial incident was Lamont Jones, telling defendant, not to sell drugs and see no territory. And then after that threat was made, then co defendant Johnson beat up Lamont Jones. So Lamont Jones came back to defendants shopping and said your homie just beat me up. So, you know, got on the phone someone is going to die today. And then about 20 minutes after that, Eric and co defendant Johnson come back into the shop and say, well the sea notes just shot at Eric while he was driving co defendant Johnson's car. So, we need to go get the car, and they did. So, they were going over there to retaliate and there's no question that defendant was involved in this he's involved, every step of the way. The sea notes, expect him to come with Johnson to get the car, because he's involved. What is in the record and shows it to see notes expected. You say that but what. Yes, let me see. That was the testimony I believe of Wilson. If I could look in my because sorry. Wilson testified that about this ongoing dispute on the first time and that they had gotten the returned and they got the gun to put it in the brown paper bag. Wilson testified that he had seen defendant drive the Oldsmobile car before, which was Johnson's car, and that they were. They left in the Oldsmobile this isn't trial record see 110. They return and they got the got the gun, got the paper bag and put it in the flower pot. So, I'm sorry your honor I will keep going keep looking. I'm certain that it was in the record that they, they did expect Johnson to come back with them and even if you take Bertram's affidavit as fact they expected Johnson to come back. They expected sorry defendant to come back with Johnson for the shooting and defendant switched out his car instead of taking his own car to take Johnson back to that area they switched out for different cars so that defendants car would not be recognized and this is defendant, not Johnson. So, if he is concerned about his car being recognized when he takes Johnson back over there it's because he's involved he's involved in this entire incident so when defendant takes him over there and drops him off in the Because that was the entire purpose that is why the defendant waited. That is why he backed the car up. And that is why he drove Johnson away from the scene. After the shooting he waited for the shooting in the alley and then in the shooting in the street. There were two kind of two exchanges of gunfire, both in the alley and in the street, and it doesn't matter. This was defendants argument at trial defense counsel argued in closing argument that it was really the sea notes who were the instigators of this that they fired first, and that Johnson and defendant were just acting in self defense. And the state's attorney argued in rebuttal. Does it matter who actually shot first. No, and it, and it didn't. There's nothing in the circuit courts finding that found defendant guilty because Johnson shot first circuit court found defendant guilty because he wasn't just there. The circuit court found that they had the intent to go back, but isn't it correct Miss Webber that if Jocelyn actually has a self defense claim that that would unnerve to Anderson. If Johnson had a self defense claim, then yes that would also go to Anderson, but he did not. It has been rejected it was rejected the trial court that this is a self defense. That's what the issue is here now is that is whether the real question is whether or not this is in fact new evidence and I know you've already said you don't think that it is. But if it is, I know that the new evidence is coming from someone who was not previously available. Allegedly the information was given to police and that information is now lost that. So, why shouldn't he be able to at least at this stage, simply be able to show that that that that there's a culpable claim of actual innocence. Because if there's nothing has a self defense claim and just that would make Johnson innocent, then, therefore, Anderson would be as well because Anderson's only try here, based on accountability. Johnson does not have a self defense claim because it does not matter who shot first, it doesn't matter if Bertram's affidavit is correct, and that it was the sea notes who fired. First, they went over there for a shooting Johnson had his gun he took the gun when he got out of the car and ran toward the sea notes, just because the sea notes got to their gun first, which is what the defendant is alleging that they got the first shot off. It doesn't mean that Johnson now gets to say it was self defense when he was himself was going over there to shoot them, and nothing in Bertram's. Let's just be clear, though, with the trial evidence, what was the evidence that actually clarifies for us absolutely that they went there for a shooting. That was a finding of fact by the circuit court, but the evidence that he relied on was this evidence that all throughout the day, there had been this ongoing back and forth that the defendant parked away and let co defendant Johnson out that he went forward and he parked and he waited for co defendant Johnson to come back. Was that when co defendant Johnson was making his phone call. He dropped him off at the phone booth and our defendant in this case, had to wait for him to finish making his phone call that that was Lamont Jones that went to make the phone call at a defendant's shop not co defendant Johnson. So it was Lamont Jones who was the initial person who came to the shop in the morning and told defendant to stop selling drugs on C note territory. I mean the trial court made specific findings of fact in this case, and this court has relied on them quote, this is the finding of the trial court, the evidence shows clearly that defendant took an active part in this particular shooting he was not just there. The evidence shows the movement of car the placement of the car, the statement itself indicates that defendant knew what was going on with the shooting, and this court believes that Mr Sutton, along with Mr. Anderson went there for the purpose of a shooting to do harm to those other individuals, and it does not matter who shot first, it does not matter who shot first because they went there for a fight. They went there for a shooting. And even if the C notes managed to get that first shot off. It does not matter because they went there to shoot at the C notes. So Johnson would not have a self defense claim this was already litigated in the trial court, and it was raised on appeal and his direct appeal and it was raised in his fourth post conviction appeal in which this court, again, found that there was evidence finding. All of that is true but no court, the trial court, and there's not the appellate court on any of the previous appeals have had Bertrand Anderson's affidavit or testimony. That is true, Your Honor, but no court has ever made a finding of fact, or even referenced that Johnson fired first, that simply was just not because they had, they had nobody no witness no outside witness no unattached witness who said that. Well, Your Honor, if that were true, they could have said that the evidence showed that the C notes fired first I mean that testimony at trial was that Johnson from the state's witness was that Johnson filed first, the trial court never said that never intent to shoot someone with your gun out running toward them, and because they managed to get a shot off at you first, you are now committing self defense. It just is a, it just is irrelevant. What about this, if you would go to the other issue for a moment just what's your response to Mr. Ornstein's argument with regard to the motion alleged motion and his contention on that. Well, you know, we argued in our, we made our argument in our brief for that but if his argument is that it's not file stamped because defense counsel said that. If defense counsel didn't file it, then that leads one to believe that the issue was resolved. I mean, the only thing Bertrand he's just saying that maybe it wasn't resolved but it, it raises an issue as to the street file. And what was told by the state's attorney's office to Johnson's attorney. Again, Your Honor, I would argue that that is completely insufficient, but even if I mean all. Because it's just a piece of paper, it's not even signed I mean it's not just. But that's not at this stage. They're raising an issue with regard to that and here's some evidence that indicates what the state's attorney said and maybe there should be a hearing to determine what's going on here and whether the, the prosecutors, or the excuse me the police knew something that was Brady material that could have made a difference in the jury's result. Your Honor, we would argue that even if, even if Bertram spoke to the police and even if the police wrote that down on a GPR and then lost it, or hit it, or didn't turn it over. It is not Brady because it's not material. Again, this all comes down to this red herring of a claim about who shot first, and that really is not relevant, it is irrelevant. This court did not make a finding, or the trial court did not make a finding that Johnson shot first. And, or that the sea notes shot first I mean the evidence of trial presented was a Johnson shot first, but the trial court never made that a finding of fact trial court did not rely on that. In its opinion that defendant was guilty tenant was found guilty because he and co defendant Johnson intended to go over there to commit a shooting, there is nothing to suggest that they were just going over to get this car. Again, you have to look at all of the trial evidence, and this evidence here and the whole series of events that happened throughout the day, telling defendant to stop selling drugs, and then that person gets beat up by co defendant Johnson, the GDs, and then the rival gang has shot at their car and stolen the car, and all they're going to do is just go back and get it like this was part of an escalating gang war. Any other questions. No, Your Honor, we would again just reiterate that this is a red herring, that is not. It does not matter. Ultimately, if the sea notes fired first it does not create a self defense claim for Johnson it does not create a self defense claim for defendant. And for these reasons and those contained in our brief we'd ask that you affirm the trial courts decision, denying defendant leave to file a successive post conviction petition. Thank you. Thank you, Mr Einstein. You're. I did that last time to I apologize. Okay. Three points Your Honor. So, so first I have to say this first sort of a technical legal point the state argues that Johnson's affidavit army I'm sorry Bertram's affidavit and justice probably to its arguing is is contradictory of my client's testimony in terms of what which direction Johnson did right right after he got out of the car. And I would know that people be Robinson said that you do not consider what you know at this stage, whether, whether, whether, whether the evidence is contradictory to the trial testimony and there's no reason to assume that does not include defense testimony that that's all for a later stage. The second thing is that, you know, the state attorney says repeatedly you know the circuit court made these findings. Well the circuit court made this findings upon all of the totality of the, of the evidence, and then includes the not only the, the, the C notes testimony, but also their prior inconsistent statements are contemporaneous prior consistent statements which I'm pretty sure I can't say for a fact, because I don't I don't remember I don't have my notes but I'm pretty sure they were offered they were doing it. It's a different, it's a different set of facts. When this is when at this stage. This is taken is true. And let me see here. And I think, well you know, didn't it to you it doesn't it when when my counsel says it, it doesn't matter who shot first. I would disagree. It makes a great deal of difference who shot first because because because because you if you're on if you're, if you there's a threat to your life, the self defense statute says that that you can respond with commensurate force okay so there's no question under the there's an exception, saying that there's not the exception is the only exception that I know of would be the, the, the initial aggressor statute 574 if I remember that correctly. So, but they keep saying what he went to do it when he was there to do intent motive. It doesn't satisfy any of the elements of the of the initial aggressive statute and if they're saying that, that. So I think what the state is essentially saying is they were guilty of attempted murder or 10 murder. The second they both basically the second they got into their car certainly the second anybody out of the car with a gun, which would be a substantial step. I mean, I don't think that that was their trial theory if I could be wrong but if I remember correctly, the only attempt murder charge was because one of the signals got shot in the end the end the temper was based on that. So I don't I think I don't I don't think you can you can say that, that because he had sort of Johnson and some sort of intent or motor Granderson did that alone takes you out of self defense. And, and with that, I would ask this court reverse and remand for for the postmortem proceedings. Thank you very much. Appreciate your briefs your arguments today. Take the case under advisement and have a good afternoon to both of you. Thank you.